Receipt number 9998-3485837

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
AUG 17 2016
U.S. COURT OF
FEDERAL CLAIMS

|  |  |
|---|---|
| RUSSELL B. WELTY, and <br> SHARON A. STANLEY, and <br> LINDA K. FULTON, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | No. 16-1017 L |

**COMPLAINT**

Plaintiffs, Russell B. Welty ("Welty"), Sharon A. Stanley ("Stanley"), and Linda K. Fulton ("Fulton") (collectively, "Plaintiffs"), bring this action against Defendant, the United States of America ("United States" or "government"), its agencies and instrumentalities and aver:

**INTRODUCTION**

1. This is an action against the United States a taking of their land and other property (the "Welty Farm" or "Property") for public use through inverse condemnation, without exercising the power of eminent domain and without providing Plaintiffs just compensation therefor, in violation of the U.S. Constitution, federal statutes, and federal regulations. The taking occurred via the actions of the United States, through the Department of Agriculture ("USDA") and the Commodity Credit Corporation ("CCC"), and in concert with the actions of

1

the United States Corps of Engineers (the "Corps") and the Natural Resource Conservation Service ("NRCS"), requiring and/or approving the construction and maintenance (improper or otherwise) of a levee (the "Levee") on a conservation easement (the "Easement") on the property immediately south of and downstream from the Property along the Whitewater River in Cape Girardeau County, Missouri.

2. Specifically, the United States, by USDA and the Corps, in allowing, permitting, and, through the CCC, affirmatively requiring maintenance (improper or otherwise) of the Levee knew, or reasonably should have known, that the direct, natural, probable and foreseeable result of the gradual physical processes set in motion by that action or series of actions would be increasingly frequent and severe flooding of Plaintiffs' land and property.

3. The agencies and instrumentalities of the United States foresaw, or reasonably should have foreseen, that the approval, installation, and maintenance of the Levee would effectively impose flowage easements on the Welty Farm, thereby appropriating Plaintiffs' rights therein for public usage, and severely invading the Property.

4. Moreover, Defendants have affirmatively and persistently concealed their actions from Plaintiffs, instead instructing Plaintiff Welty that his claim lay against his neighbor, Mr. Terry Givens ("Givens"), and subsequently refusing to disclose any information about their dealings with Givens. It is only through a recent lawsuit against Mr. Givens that Plaintiffs have been able to discover the affirmative actions by Defendants which directly and proximately led to the taking of a flowage easement across the Welty Farm, without just compensation paid therefor. *See, e.g.*, Ex. 1, Easement Contracts; Ex. 2, NRCS FOIA Response.

5. The gradual physical processes that have rendered and are rendering Plaintiffs' lands unusable for agricultural purposes have not yet stabilized. In the alternative, if the Court should find that the processes have stabilized, the earliest possible date of stabilization was August 5, 2013. Ex. 3, Welty Farm Profit/Loss Reconciliations. In any event, these processes had not stabilized before August 26, 2010, when the Easement was first executed and entered between Givens and the Defendant, through the CCC. Ex. 1, Easement Contracts, at 1-2, 6. Even assuming, *arguendo*, the situation stabilized at any point prior to August 26, 2010, the Easement was reenrolled on May 9, 2013, *id.* at 4-5, constituting a new affirmative action by the United States, which resulted in a taking of the Welty Farm for public use without payment of just compensation therefor.

## JURISDICTION AND VENUE

6. This Complaint states causes of action for taking of property and flowage easements without just compensation in violation of the Fifth Amendment to the United States Constitution. This Court has jurisdiction over this action under the Tucker Act, 28 U.S.C. § 1491(a)(1), which authorizes the United States Court of Federal Claims to render judgment and award money damages on any claim against the United States based on the United States Constitution, an Act of Congress, a regulation of an executive department, or an express or implied contract with the United States. *See United States v. Testan*, 424 U.S. 392, 397-98 (l976).

7. Venue is proper in the United States Court of Federal Claims pursuant to 28 U.S.C. § 1491(a).

## PARTIES

8. Plaintiff Russell B. Welty ("Welty") is a private individual who resides at is a private individual who resides at 1904 Bloomfield Rd., Cape Girardeau, MO 63703.

9. Plaintiff Sharon A. Stanley ("Stanley") is a private individual who resides at 1906 Marietta St., Cape Girardeau, MO 63701.

10. Plaintiff Linda K. Fulton ("Fulton") is a private individual who resides at 12 Walker Ave., Gaithersburg, MD 20877.

11. Plaintiffs are all siblings who own, as Joint Tenants with a Right of Survivorship, the Welty Farm. The Welty Farm, through the actions and/or omissions of the Nominal Defendants, has been subjected to incrementally more severe flooding until, in the most recent crop year (2015), it was rendered wholly unusable for purposes of agricultural production, and flooding otherwise deprived Plaintiffs of their use and enjoyment of the land.

12. The Defendant is the United States of America, which is a sovereign entity and body politic. The United States answers and is responsible for all of the agencies and/or instrumentalities identified herein.

## FACTUAL ALLEGATIONS

13. The Welty Farm is bordered on the west by the Whitewater River, identified by the U.S. Geological Survey ("USGS") twelve-digit Hydrologic Unit Code ("HUC-12") 071401070511, located in Cape Girardeau County, Missouri.

14. The Commodity Credit Corporation is a wholly owned United States government corporation created in 1933 to "stabilize, support, and protect farm income and prices," under the

authority of the CCC Charter Act of 1948 (P.L. 80-806). As part of this charter, the CCC is the contracting entity for the USDA Conservation Reserve Program ("CRP") and its progeny.

15. The United States Department of Agriculture is a Federal agency or instrumentality, which oversees and staffs the CCC in its entirety, largely through the Farm Service Agency ("FSA"). Similarly, The USDA is the agency which oversees the NRCS.

16. The Welty Farm has been in the Plaintiffs' family for several generations as productive farmland. Ex. 4, Welty Title Report

17. Specifically, the Welty Farm consists of 86.5 acres of cultivated agricultural land, along with significant acreage consisting of wetlands, forests, and other undeveloped area. Ex. 3, Welty Farm Profit/Loss Reconciliations (showing 86.5 acres of insured cropland); Ex. 4, Welty Title Report.

18. Regardless of when it was or should have been reasonably apparent that a taking had commenced, the Plaintiffs were all Joint Tenants with a Right of Survivorship of the Welty Farm, subject to their mother's life estate thereon.

19. Plaintiffs' mother, Nettie Welty, passed away on March 18, 2016, leaving Plaintiffs Welty, Stanley, and Fulton with an unencumbered fee simple interest in the Welty Farm.

20. Mr. Terry Givens ("Givens") purchased the property bordering the Welty Farm to the south (the "Givens Property") in 1998. Ex. 5, Givens Title Report

21. Following his purchase, Givens proceeded to:

      a.      Unlawfully manipulate the wetlands system that forms a portion of the border of the Givens Property and the Welty Farm;

      b.      Undertake major excavations to the Givens Property so as to re-grade it against the natural slope of the flood plain; and

      c.      Construct a levee that further altered the natural hydrological flow of the Givens Property, increasing its vulnerability to erosion damage.

22. This levee – poorly constructed and without compaction – failed during a flood event in January of 1999, resulting in significant scour of the Givens Property.

23. Following Mr. Welty's complaints to the NRCS and Corps regarding the scour, Givens was determined to have manipulated the wetland system. Ex. 6, 1999 NRCS Wetlands Determination.

24. No later than October of 2000, with the approval, input, and oversight of the United States, Givens constructed or caused to be constructed a three-foot levee – and in some locations as high as ten feet – along the western edge and northwest corner of his property (*i.e.*, the Levee).

25. Givens has provided a sworn statement to the effect that his land was enrolled in a conservation program with USDA as of 1998. Ex. 7, Givens Affidavit at ¶8.

26. On August 26, 2010, the United States, through the CCC, entered a contract with Givens for a conservation easement in a portion of the Givens Property (*i.e.,* the Easement) under the auspices of the Conservation Reserve Program ("CRP"). Ex. 1, Easement Contracts.

27. Despite being executed in late August of 2010, the Easement contract was retroactively dated to cover the period from October 1, 2000 through September 30, 2010.

28. The Easement included the Levee within its boundaries. Ex. 7, Givens Affidavit at ¶19.

29. The Easement requires Givens to maintain all lands subject thereto in a more or less natural state, relative to the condition of those lands when they were enrolled in the CRP. *Id.*; *see also* Ex. 1.

30. On May 9, 2013, the Easement was re-enrolled in the CRP, with an effective date of October 1, 2010 and an expiration date of September 30, 2025. Ex. 1, Easement Contracts at 3-5.

31. Upon information and belief, at all times pertinent to the enrollment of the Easement in the CRP, USDA was both aware of the location of the Levee, and approved its design and inclusion in the terms of the Easement.

32. Further, upon information and belief, USDA (through the CCC and NRCS) designed the conservation plan ("Conservation Plan" or "Plan") that would and does apply to the Easement that it oversees and enforces, with input from Givens as the underlying landowner. Ex. 8, Givens State Court Filing at ¶6.

33. To wit, the Plan "establishes an easement for a filter strip and levee which is 50 to 100 feet wide and adjacent to Givens' east bank of [the] Whitewater River." *Id.*, at ¶8.

34. The nature of the Easement, and the control over the terms of the Plan exerted by USDA, CCC, and NRCS clearly demonstrates that the United States did, in fact, have

responsibility for and involvement with the Levee, although Welty was not aware of the government's responsibility or involvement until this year (2016).

    35. During flood events, levees are known to cause upstream flooding. *See*, *e.g.*, Reuben Heine and Nicholas Pinter, *Levee effects upon flood levels: an empirical assessment*, 26 HYDROL. PROCESS. 3225 (2012) ("Heine & Pinter"), attached hereto as Exhibit 9.

    36. Increased severity of upstream flooding from levees is a well-known phenomenon. Heine & Pinter, at 16-17 (citing prior research and publications dating back to 1964).

    37. The Welty Farm is directly upstream from the Givens Property.

    38. The Levee's positioning is such that it redirects the floodwaters of the Whitewater River across the Welty Farm.

    39. The effect of the Levee is to encumber the Welty Farm with an unrecorded flowage easement, for which just compensation has not been paid.

    40. The United States knew, or reasonably should have known, the effects of its actions in approving or requiring the maintenance of a levee on neighboring, upstream landowners.

    41. Upon information and belief, the Plaintiffs were never provided with any notice that the United States intended to encumber the Welty Farm with a flowage easement.

    42. As a natural, direct, and probable result of the Levee, the soils of the Welty Farm have gradually, but irregularly, become more inundated.

43. The inundation of the soils of the Welty Farm has gradually, but irregularly, rendered portions of the cultivated land unproductive. Ex. 3, Welty Farm Profit/Loss Reconciliations.

44. It was not apparent until, at the earliest, September 16, 2014, that the gradual process set in motion by the United States' approval and requirement of maintenance of the Levee would result in the permanent loss of all beneficial use of the Welty Farm as productive agricultural land. *Id*.

45. Moreover, it was not apparent until, at the earliest, August 5, 2013, that the Levee (as approved by the United States and required to be maintained thereby) would result in a permanent loss of *any* of the Welty Farm, due to increased inundation and flooding. *Id*.

46. Even assuming, *arguendo*, that the taking of the Welty Farm was or reasonably should have been foreseeable prior to August 5, 2013 (at the absolute earliest), the United States has actively concealed its involvement with the Levee. Ex. 2, NRCS FOIA Response.

47. As noted, the Plaintiffs did not become aware of the United States' involvement with or control over the Levee until such fact was disclosed by Givens in a separate state court filing on March 14, 2016. Ex. 7, Givens Affidavit; Ex. 8, Givens Court Filing.

48. In any event, the May 9, 2013 re-enrollment of the Easement in the CRP was an affirmative action by the United States, perpetuating the undeclared flowage easement across the Welty Farm and associated inundation of the cropland thereon. Ex. 1, Easement Contracts, at 3-5.

49. The actions of the United States, in approving the Levee and requiring the maintenance thereof, have had the natural, direct, and probable result of inundating the soils of the Welty Farm to the point where they are no longer productive. Ex. 3, Welty Farm Profit/Loss Reconciliations.

50. The taking by the government of the Plaintiffs' property inured to the benefit of the government and pre-empted the Plaintiffs' right to use and enjoy their property.

51. Specifically, the taking of a flowage easement across the Welty Farm was a natural, direct, and foreseeable consequence of taking a conservation easement in the Givens Property, which approved of and included a requirement to maintain the Levee.

52. The University of Missouri's Agricultural Extension ("MU Extension") publishes average prices for cropland in each of Missouri's 114 counties and St. Louis every five years. Ex. 10, MU Ext. Publication G403 ("G403"), *available at* http://extension.missouri.edu/explorepdf/agguides/agecon/g00403.pdf (last accessed 8/16/16).

53. The most recent county census was published in 2012. *Id.*

54. MU Extension also publishes the annual survey, conducted by USDA's National Agricultural Statistics Service ("USDA/NASS"), of farm real estate values for Missouri and the states bordering Missouri. Ex. 11, MU Ext. Publication G404 ("G404"), *available at* http://extension.missouri.edu/explorepdf/agguides/agecon/g00404.pdf (last accessed 8/16/16).

55. By using the data from G404, it is possible to adjust the values in G403 to determine the average value for agricultural land in any county in Missouri in any given year. Ex. 10, G403.

56. The government's actions, resulting in a taking of their property without payment of just compensation therefor, has forced the Plaintiffs to resort to this Court for relief, and the Plaintiffs are entitled to attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

WHEREFORE, Plaintiffs Welty, Stanley, and Fulton respectfully pray that the Court:

A. Enter judgement against the Defendant in an amount the Court deems fair and reasonable in light of the damages suffered, but in any event not less than four hundred thousand dollars ($400,000.00);

B. Award Plaintiffs their costs expended herein, along with reasonable attorneys' fees and expenses, pursuant to EAJA; and

C. Award any other remedy as the Court finds to be in the interests of justice.

Respectfully Submitted,

 /s/Alexander J. E. English
Alexander J. E. English, Esq.
The Law Offices of Carolyn Elefant, PLLC
2200 Pennsylvania Ave., NW
4th Floor East
Washington, DC 20037
Phone: 301.466.4024
Fax:     410.928.4952
Email: aenglish@carolynelefant.com

Dated this 17th day of August, 2016          *Attorney for Plaintiffs*

11